No. 2529.

LEON & H. BLUM *v*. J. S. ROGERS ET AL.

1. VERDICT—GENERAL AND SPECIAL.—While irregular for the jury in one case to render a general and special verdict, yet where they are consistent and the same judgment would follow upon each, the irregularity is of no consequence. But where the finding upon special issues is contradicted by the general verdict, no judgment can be rendered and the verdict should be set aside.

2. SEPARATE PROPERTY—TRUST.—The application of the separate funds of the wife in part payment of a tract of land, with her approval, gives

her a proportional interest in the land, and when the deed is taken by the husband in his name, the trust in favor of the wife is created, and she becomes the equitable owner of such proportional interest.

8. SAME—IMPROVEMENTS.—Such equitable interest in the land is not lessened by subsequent improvements upon the land. A creditor can not require an account to be taken of cost of the land and improvements. Only the community interest in the land is subject to execution.

4. LIMITATION OF THREE YEARS.—A sheriff's sale of land, if valid, breaks the chain of title of the defendant in execution remaining in or taking possession subsequent to the sale, and claiming under the statute of limitations of three years, as against the holder of the title which passed by the sheriff sale.

5. IRREGULARITY IN SHERIFF SALE.—Facts where inadequacy of price was accompanied by facts accounting for such price.

6. SHERIFF SALE—PURCHASE MONEY.—Upon the sheriff executing a deed to the purchaser, it will be presumed that payment was made. Where the judgment creditor purchases it is not necessary that the money be in fact paid to the sheriff. The credit upon the execution is a payment.

APPEAL from Hopkins. Tried below before Hon. J. A. B. Putman.

This suit was originally filed by T. S. Rogers and Mary Rogers, his wife, to remove cloud from the title to certain property in the town of Sulphur Springs, sold under execution in favor of appellants against J. S. Rogers, and bought by Hyman Blum, one of the appellants.

The execution under which the sale was made was issued January 12, 1882. It went into the hands of the sheriff of said county, who, at the instance of Hunter, attorney for plaintiffs, levied the same upon the lots in controversy in this suit, as well as upon other property, as the property of T. S. Rogers, in satisfaction of same. These lots and other property were advertised for sale, and on the fourth of February, 1882, were sold by the sheriff with deed to the purchaser, Hyman Blum, for the price bid, twenty-five dollars per lot.

T. S. Rogers, appellee, was present at the sale and gave notice that the three parcels of the George acre, and the ware house lot, the parcels of land involved in this suit, were the separate property of his wife, Mrs. Mary Rogers, and so far as the George acre was concerned, were part of his homestead and the ware house property was his place of business, and so were not subject to this levy and sale. S. J. Hunter, as the attorney of plaintiffs in execution, was also there and publicly

assured the public that the judgment, execution and sale were all right, and that the purchaser would take good title to these lots. S. J. Hunter, as said attorney, bid in these lots at twenty-five dollars each, and caused the amount of the bids to be credited on the execution, and directed the sheriff to make deeds to, and in the name of Hyman Blum, which was accordingly done.

Soon thereafter this appellee, T. S. Rogers and his wife, Mary Rogers, instituted these proceedings in said district court to set aside said sheriff's sale and deed to Hyman Blum for the lots in controversy, and to remove said sheriff's deed as cloud from their title, etc.

The defendant demurred, pleaded general denial, and a trial was had and judgment for plaintiffs, which on appeal was reversed, October 20, 1884. Opinion by Judge Delaney, of Commission of Appeals.

After the cause was reversed and remanded to the district court, by this court, appellees amended their pleadings, setting up more specifically the homestead exemptions, the separate rights of Mrs. Rogers, the wife, and the gross inadequacy of price at sheriff's sale, and the *mala fides* of the purchasers, etc.

The answers of Blums, until the plea in reconvention in trespass to try title, were general demurrers and denials, and special denials, and not asserting title to said lots or right of possession to the same, with prayer that our petition be dismissed, etc., praying for no affirmative relief. Thus the pleadings stood till October 5, 1886, when Hyman Blum reconvened by regular petition in trespass to try title and for damages, setting up legal title, with right of possession and actual ouster by appellees on the date of said sheriff's sale and deeds.

To said plea in reconvention appellees responded by general demurrer and general denial, plea of not guilty and statute of limitation of three years.

Upon this state of case the cause was tried at the fall term, 1887, before B. W. Foster, special judge, which trial resulted in verdict with judgment for appellees, from which judgment appellant prosecutes this appeal. Appellees filed in the court below cross assignment of errors, procured proper service thereof, and bring the same up for the consideration of the court.

The property now in controversy is part of a tract of one acre of land and improvements thereon. It appears that in

1871 Rogers bought one acre as a residence lot. One George bought of the same grantor an acre adjoining Rogers's purchase. Rogers at once built upon his lot, and by consent of George extended his enclosure over in his lot, which was adjoining, and on the west. Soon after, George agreed with Rogers that if he would take up the purchase money note for one hundred and fifty dollars, he (Rogers) could have his (George's) lot. This agreement was not in writing. Very soon Rogers, with consent and approval of his wife, paid to Ferrell, the grantor, one hundred dollars gold of his wife's separate money towards the purchase of the George lot, and subsequently paid the remainder and took up George's note. Subsequently, one or two years later, George receiving his note from Rogers, made a deed for the lot to Rogers.

On the trial the testimony further showed that Rogers had built upon the George lot three houses, one in the north end, one in the south end and one in or near the middle; that between the south and the middle house was about one-ninth of the lot, separated from the other parts by fences, and still used by plaintiff in connection with his residence on the east. Between the residence lot and the George lot Rogers had, for his own convenience, opened an alley twenty feet in width. Each of the houses was inclosed. The sale was made separately.

There was testimony that Rogers had changed the division fences several times at his own will, and generally reserved some rights in his leases of the houses. The houses, however, had been actually leased for several years.

It was shown that the George lot, with improvements, was worth twenty-five hundred dollars. Eight-ninths of the lot, with the improvements, was sold at the sheriff's sale and bought by Hyman Blum for seventy-five dollars

The judgment, execution, levy and sheriff's deeds were relied upon by the defendants as title.

The plaintiffs, in defense of the plea in reconvention, put in evidence the date it was filed, being more than three years after the sheriff's deeds were executed; showed possession by tenants, and in person, and exhibited a chain of title from the State, save only as to one link. A sheriff's deed without the judgment was admitted over objection of the defendants. After the close of the testimony plaintiffs, having obtained a transcript of the judgment, asked the court that it be admitted,

supporting the motion by affidavits of oversight. The judgment was rendered in another county, and every effort possible had been taken, after discovering its importance, to get the testimony. The court refused to open the case and excluded the testimony, thus leaving the chain of title imperfect. This ruling was excepted to by the plaintiffs.

The court in the general charge, after defining the homestead, giving the law fairly as to abandonment, submitted the issue as follows: "If, therefore you believe from the testimony that the plaintiff, T. S. Rogers, did abandon that part of the homestead here in controversy, to wit: the west acre of said tract purchased from George, except the cow lot not in controversy, and erected thereon a class of buildings inconsistent with the use thereof, as a part of and in connection with part of the premises where he actually resided, and was designated and really was used for the purposes of renting, and that said acts were done by Rogers without any intention of practicing a fraud upon his wife, then you will find for defendants the land claimed by defendants Blum in said west acre sold by George to plaintiff Rogers." The charge then defined "separate and community" property, informing the jury that the presumption that all property acquired during coverture was community, can only be rebutted by clear evidence that the same was the separate property of one of the married parties. This issue was submitted as follows:

"If, therefore, you believe from the testimony that the property here in controversy, or any part thereof, was purchased by T. S. Rogers during the coverture of himself and Mary Rogers with the community funds of himself and his wife, and if any part of such funds were the separate property of his wife, and were invested in the land in controversy under the instructions given herein, Mrs. Rogers may have acquired an interest therein, and in such case her interest would be proportionate to the amount of her separate funds invested therein, and the remaining interest therein will be presumed to be community property, and would be liable to sale under execution, provided it was not exempted from forced sale as homestead under the instructions heretofore given."

The defendants presented a number of special issues which were by the court submitted to be found by the jury in addition to the general charge.

In response to the general charge and to the special issues, the jury rendered the following verdict:

"We, the jury, find for the plaintiff against the defendant's adverse claim for the ware house lot, and further find for the plaintiff a two-thirds interest in lot known as the George lot in this controversy as the individual interest of Mary Rogers, and find for the defendants one-third undivided interest in the lot known as the George lot in this controversy."

"We, the jury, find on the following questions according to number:

"No. 1. (Do the plaintiff's in this suit claim title to the three lots of land out of the one acre tract conveyed by W. S. Ferrell to F. M. George, under deed from F. M. George to T. S. Rogers?")

"No."

"No. 2. (Was the consideration of the deed from F. M. George to T. S. Rogers, the assumption by T. S. Rogers, and the undertaking on his part to pay W. S. Ferrell the purchase price owing by George to Ferrell for the same lot of land?")

"Yes."

"No. 2. (Was the purchase price for the land conveyed by George to Rogers, paid by Rogers, in whole or in part, out of the funds belonging to the separate estate of Mrs. Mary Rogers, wife of T. S. Rogers, and if, in part only, then what portion of said price was paid with funds belonging to said separate estate of Mrs. Mary Rogers, and what portion of said price was otherwise paid, and when was the payment made, if any, out of the separate funds of Mrs. Rogers?")

"Yes, two-thirds. Yes, one-third. In the latter part of 1871 or first part of 1872."

"No. 4. (Was the agreement, if any, made between T. S. Rogers and F. M. George, that the latter would positively sell and the former would positively buy the land conveyed by Ferrell and wife to George, entered into before or after the conveyance by Ferrell and wife to George?")

"After."

No. 5. (At the time of the verbal agreement, if any, between George and T. S. Rogers, that if Rogers would pay Ferrell and wife the amount owing by George as the purchase price of the acre conveyed by Ferrell and wife to George, George would convey the same land to Rogers, was Rogers already in posses-

sion of the land under leave and permission of George granted prior to making of such verbal agreement?"

"Yes."

"No. 6. (Did the sheriff of Hopkins county sell the three subdivisions of the F. M. George acre tract described in the plea in reconvention of Hyman Blum under execution in the case of Leon & H. Blum v. T. S. Rogers, and make conveyance thereof to the defendant, Hyman Blum, on February 7, 1882)?"

"Yes."

"No. 7. (What was the value of the three subdivisions of the said acre lot so sold by the sheriff under execution at the date of said sale, not including the improvements on said subdivisions? And what was the value of the improvements on said subdivisions at the date of said sale? And when and by whom were said improvements made?")

"One hundred and fifty dollars. Improvements, two thousand three hundred and fifty dollars. By T. S. Rogers."

"No. 8. (Since the date of said execution sale, have T. S. Rogers and his wife, Mary Rogers, until her death, and the other plaintiffs since her death, been in possession of the property so sold and receiving the rents and profits thereof, and using the same to the exclusion of, and adversely to, the defendant, Hyman Blum?")

"Yes."

"No. 9. (What is the value of the use and occupation of the three subdivisions of the F. M. George acre since the sheriff's sale to Hyman Blum to the present time?")

"Thirty dollars per month."

"No. 10. (Was T. S. Rogers married to Mary Rogers before July 13, 1871, when he and George bought their respective one acre lots from W. S. Ferrell and wife?")

"Yes."

"No. 11. (To what use were the three subdivisions of the F. M. George acre, sold under execution to Hyman Blum, put and appropriated by T. S. Rogers at the date of such execution sale, and how long had they been so used and appropriated by him?")

"Two of the houses were rented and the grounds were used for various purposes."

"No. 12. (Were the said subdivisions of the F. M. George acre rented to tenants at the date of said execution sale? And if so, how long had they been rented to tenants?"

"Two of them were. North lot, eighteen months. Middle lot, about three years."

"No. 13. (Were the improvements on said three subdivisions made by T. S. Rogers thereon for the purpose of renting out said subdivisions to tenants? And if so, was it the intention of said T. S. Rogers, in making improvements and in renting them to tenants, to discontinue the use of said subdivisions for the purpose of the home and domicil of himself and his family?"

"Yes; latter clause, no."

"No. 14. (What proportion of the F. M. George one acre lot is embraced by the part called the Rogers cow lot, lying between the lot on the south end of the said one acre lot and the lot occupied by Lichtenstein at the date of the execution sale?"

"About one-ninth."

Objections were made to the verdict when returned, by the defendants, but it was received and upon it a judgment was rendered for the plaintiffs for the entire property, and the defendants appealed.

*Scott & Levi,* for appellants: To create resulting trust money must be paid at the very time of the transaction which vests title. (Ross v. Kornrumpf, 64 Texas, 394; Parker v. Coop, 60 Texas, 118; McKamey v. Thorp, 61 Texas, 648; Perry on Trusts, 133, and cases cited; Parol contract for sale of lands void, Rev. Stat., art. 2464.)

Mere payment of purchase price not sufficient to take case out of statute. (Robinson v. Davenport, 40 Texas, 342; Garner v. Stubblefield, 5 Texas, 558; Neatherly v. Ripley, 21 Texas, 434; Dugan v. Colville, 8 Texas, 126; Taylor v. Rowland, 26 Texas, 293.)

Nor possession, especially if vendee be already in possession. (Hibbert v. Aylott, 52 Texas, 533.)

*H. McKay, J. H. Dinsmore* and *A. A. Henderson,* for appellees, cited: Parker v. Coop, 60 Texas, 116; Ry. Co. v. Robards, 60 Texas, 547; Ross v. Kornrumpf, 64 Texas, 390; Bank v. Weems, 69 Texas, 490; Archibald v. Jacobs, 69 Texas, 251; LeGierse v. Moore, 59 Texas, 471; Wright v. Daily, 26 Texas, 730; Harris v. Hardeman, 27 Texas, 248; Elliott v. Whitaker,

30 Texas, ⁴71; Paxton v. Meyer, 67 Texas, 99; Long v. Brenneman, 59 Texas, 212; Harris v. Townes, 13 Texas, 507.

WALKER, ASSOCIATE JUSTICE. Article 1328 of Revised Statutes provides that "the verdict of a jury is either a general or a special verdict." Accordingly the courts have condemned the practice of submitting the general issue or issues together with special issues to the jury. But where the findings upon the special issues support the general verdict and but the one judgment, in drawing from such facts so found the conclusions of law, and upon the general verdict, can be rendered, such irregularity has been held immaterial. (Heflin v. Burns, 8 S. W. R., 48; 70 Texas, 347.)

In this case, the general verdict finding two-thirds of the block in controversy to be the separate property of the wife, and one-third subject to execution as community thereby found against the plaintiffs, upon the issue upon the homestead. The special finding number thirteen is contradictory to the general verdict in finding the block to be homestead.

Disregarding the general verdict, the court entered judgment upon the special verdict. The court, to render a judgment, had to select between these findings. If the verdict be construed to include both the general and the special then the meaning is not evident, nor can it be made certain.

The verdict being contradictory and therefore unintelligible, it can not support the judgment. For this error the judgment will be reversed. (45 Texas, 71, Yeary v. Smith.)

It is thought best to notice other questions made in the record with view to another trial. The complaint in the first assignment of error is not sustained by the facts as detailed. It is recognized that "the trust must result, if at all, at the instant the deed is taken and the legal title vests in the grantee." And accordingly that it should appear that the trust in favor of Mrs. Rogers existed at the time the legal title passed from George to her husband and from the transaction itself. (Parker v. Coop, 60 Texas, 118, citing Perry on Trusts, 133.)

The parol agreement between George and the husband did not affect the title to the land. The money of the wife, with her consent, was applied to taking up the purchase money note for which George deeded the land. Her money was used directly in the acquisition of the land—was invested in it. Under these facts before execution of the deed to the husband

her equitable estate pro tanto was fixed in the land.  As in Mc-Camey v. Thorp, 61 Texas, 650: "By its terms (of the deed) the legal title to the land was placed in the community of herself and husband; but her money having paid for it, a resulting trust was created in her favor and she became the equitable owner of the property."

The improvements subsequently placed upon the land could not lessen her proportional interest in it.  They would follow the land and belong, when fixed upon it, to the owners.  The levy and sale would only affect the community interest in the land, of course with right to partition—such partition upon basis of ownership in the land at its acquisition.  The creditor could seize and subject to sale the community interest in the land.  This did not include the right to an account between the wife and the commuity in order to reach improvements upon her part.  Owning the land, she owned the improvements upon it.

In the cross appeal the appellees insist that the judgment should be affirmed, upon the ground that no other proper result could have been reached on the trial upon the facts.  It is well settled that a sheriff's sale of land, if valid, would break the chain of title of the defendant in execution, remaining in or taking possession subsequently to the sale and claiming title under the statute of limitations of three years and against the holder of the title which passed by the sheriff's sale.  (26 Texas, 730, Wright v. Daily; 27 Texas, 248, Harris v. Hardeman; 30 Texas, 411, Elliott v. Whitaker; 59 Texas, 212, Long v. Brenneman; 67 Texas, 99, Paxton v. Meyer.)

Nor does the record present a case showing that the sheriff sale was voidable.  There is gross inadequacy of price, but through no fault of the plaintiffs in the execution, so far as disclosed in the record.  The defendant in execution was present, forbidding the sale, earnestly proclaiming that the lot was his wife's separate property and was exempted as homestead—threatening suit against any purchaser.  The attorney for the plaintiffs was at the same time assuring the bidders that the sale would pass the title.  The sheriff's return and the deeds for the property by him executed recite the payment of the bids made at the sale.  It will not be presumed that the deeds would have been executed by the sheriff before or until the purchase money was paid or adjusted.  It has been held: "If the plaintiff becomes the purchaser, the officer ought not to exact pay-

ment in coin from him when he is clearly entitled to the proceeds
of the sale." (Freeman on Executions, sec. 300, and cases
cited.) It would be an idle ceremony if the plaintiff, on buying
at a sale for his benefit, should be required to actually hand
over to the sheriff the money to be returned at once. The
receipt of the plaintiffs acquits the sheriff equally with his
bringing into court the proceeds of sale with the execution un-
der which they are made.

For the insufficiency in the verdict the judgment below is
reversed.

*Reversed and remanded.*

Opinion delivered November 9, 1888.