## THOMPSON v. MOOR. (No. 2113.)

Court of Civil Appeals of Texas. El Paso. March 1, 1928.

Rehearing Denied March 22, 1928.

1. Adverse possession ☞115(1)—Whether claimant had obtained title under ten-year limitation statute held for jury (Rev. St. 1925, art. 5510).

In suit claiming title and right of peaceable and adverse possession of 50-acre tract under 10-year statute of limitations (Rev. St. 1925, art. 5510), whether the claimant had obtained title under such statute held for jury.

2. Trial ☞351(5)—Refusal to submit issue as to 10-year inclosure by fence held not error, where court submitted case on 10-year limitation issue, defining peaceable and adverse possession (Rev. St. 1925, arts. 5510, 5511).

In suit claiming title and right of peaceable and adverse possession to 50-acre tract under Rev. St. 1925, art. 5510, court's refusal to submit defendant's requested issue as to 10-year inclosure of land claimed, by fence, pursuant to article 5511, held not error, where court had sufficiently submitted case on special issue of 10-year limitation under article 5510, in which instruction he had defined peaceable and adverse possession.

3. Trial ☞352(4)—Refusal of requested issue whether claimant had one-tenth land in cultivation held proper, where there was no showing claimant owned or claimed surrounding lands (Rev. St. 1925, arts. 5510, 5511).

In suit claiming title by adverse possession under Rev. St. 1925, art. 5510, court's refusing to give special charge, pursuant to article 5511, requesting a finding on whether claimant had one-tenth of the land under cultivation, held proper, where there was no showing that claimant was owner of the surrounding lands, or claimed such lands.

4. Adverse possession ☞60(1)—That claimant settled with some claimants during limitation period held not inconsistent with hostile claim relative to another (Rev. St. 1925, art. 5510).

That plaintiff claiming adversely under 10-year limitation statute (Rev. St. 1925, art. 5510), had settled with some other claimants during such 10-year period, held not to show that his claim was inconsistent with and hostile to other unsettled claims, such as that of defendant.

5. Adverse possession ☞85(3)—Evidence held to show claimant's intention to hold under claim of right until dispossessed by record owner (Rev. St. 1925, art. 5510).

In suit to establish title by adverse possession under 10-year limitation statute (Rev. St. 1925, art. 5510), evidence held to show claimant's intention to hold under a claim of right until dispossessed by the record owner.

6. Adverse possession ☞49—Tax judgment against adverse claimant and record owner, void as to latter, held not such "adverse suit" as to interrupt 10-year possession (Rev. St. 1925, arts. 5510, 5514).

A suit for taxes resulting in judgment against record owner, and one claiming adversely to him under Rev. St. 1925, art. 5510, which judgment was void as to record owner because of insufficient citation, was not such adverse suit to recover the estate as to interrupt adverse claimant's 10-year peaceable possession period contemplated by article 5514.

7. Adverse possession ☞46—Valid sheriff's sale of land breaks chain of title of defendant in execution remaining in, or taking, possession subsequent to sale, and claiming limitation title.

A sheriff's sale of land, if valid, breaks the chain of title of defendant in execution remaining in, or taking, possession subsequently to the sale, and claiming limitation title, and against the holder of a title which passes by the sheriff's sale.

8. Taxation ☞641—Tax suit will not lie against possessory claim, unless proper party against whom tax lien foreclosure would lie was before court (Rev. St. 1925, art. 5510).

A tax suit will not lie against an adverse claimant's possessory claim, under Rev. St.

1925, art. 5510, unless the state had before the court in the suit the proper party against whom a foreclosure of the state's tax lien would lie.

Error from District Court, El Paso County; P. R. Price, Judge.

Suit by Lee Moor against D. A. Thompson. Judgment for plaintiff, and defendant brings error. Affirmed.

Turney, Burges, Culwell & Pollard and R. L. Holliday, all of El Paso, for plaintiff in error.

Jones, Hardie & Grambling, of El Paso, for defendant in error.

WALTHALL, J. Lee Moor, claiming title and right of peaceable and adverse possession, under the statute of limitations of 10 years, to some 50 acres of land, a part of survey 20, described in his petition, brought this suit against D. A. Thompson, alleging that Thompson, under a recorded deed, was claiming some right, title, or interest in said land, and was seeking to dispossess him from said land. The prescriptive period alleged was 10 years next preceding the 20th day of October, 1926.

Thompson answered by plea of not guilty, and by cross-action alleged lawful possession in himself and claiming title under deed of date October 13, 1911, and that Lee Moor, on January 1, 1926, unlawfully entered upon said premises and ejected him therefrom and unlawfully withholds same to his damage, stating same.

The case was tried and submitted to a jury on the one special issue of limitation of 10 years, defining peaceable and adverse possession. The jury found in favor of plaintiff, Lee Moor, on his plea of limitation of 10 years, and judgment was entered in his favor. The court overruled Thompson's motion for new trial and he prosecutes this appeal by writ of error.

Opinion.

We will designate the parties as appellant and appellee as in their briefs. Appellant assigns error substantially as follows:

(1, 2) In refusing to grant appellant's motion to instruct the jury to return a verdict in his favor.

(3) Error in refusing to submit requested special issues as to whether appellee, for 10 years continuously elapsing prior to the filing of his suit, had had the land sued for inclosed by a fence.

(4) Error in refusing to submit to the jury whether or not one-tenth of the land sued for was in cultivation by the appellee for a period of 10 years prior to the filing of the suit.

(5) Error in refusing to submit requested special issues 1, 2, 3, and 4, insisting that the undisputed facts were that the land was entirely surrounded by a tract or tracts of land owned, claimed, and fenced by plaintiff, and that, if the jury had answered said questions in favor of appellant, appellee could not have had judgment under the law unless the land was segregated and separated by a separate fence, and at least one-tenth of the land in the suit was in cultivation and used for agricultural purposes, as provided by article 5511, R. C. S. 1925.

(6) Error in entering judgment for appellee, as appellee "took possession of the land sued for without any claim of title, and his possession was not adverse and hostile to appellant."

(7) Error in entering judgment for appellee under his plea of ownership under the 10-year statute of limitation, because appellee's "peaceable adverse possession was disturbed by suit and the continuity of his possession was broken by suit of the state against appellant and appellee for taxes."

It was agreed that appellant is the owner of the lands involved in the suit under record title, unless his title is defeated by appellee's plea of limitation under our statute of 10 years.

[1] The evidence found in the record is devoted principally to the issue of appellee's claim of title under the 10-year statute of limitation, the evidence covering approximately some 60 pages of the record, and too voluminous to embrace in this opinion. We have carefully reviewed the entire record and have concluded the evidence is sufficient to have required the submission of the issue of limitation to the jury. Without stating the evidence as applied to each of the propositions severally, a brief summary of the evidence shows that in October, 1912, appellee took possession of several surveys of land on what is known as the island in the San Elizario grant in El Paso county, Tex., for the purpose of cultivating same for farming purposes under a system of irrigation; most of the land embraced within appellee's holdings appellee owned, but some of the land so held and inclosed by appellee's inclosure appellee did not own; that appellee at once began the clearing, fencing, and leveling of the lands, beginning at the extreme westerly end of the island at survey No. 1, and fenced the surveys lying between No. 1 and the easterly end of survey No. 33, and completed the fencing and clearing of said surveys, including the land involved in this suit, apparently in 1913 and 1914.

The lands inclosed were put in cultivation by appellee as fast as he could fence, level, ditch, and get water to it for agricultural purposes, and lands inclosed, not leveled and ditched, appellee used for pasture of his stock.

The evidence, while not as clear as it could and should be, as the witnesses speak from a map referring to places indicated by the witnesses, without identifying the places on the map, and speak more in reference to other lands inclosed and claimed than to the lands in controversy, but the evidence shows that

the northerly side of appellee's inclosure is bounded by the northerly prong of the Rio Grande; that the surveys on the northerly side call for and run to the river; that on the river side and immediately along the river, averaging in width from about 60 feet to about one-quarter of a mile, the ground in places is bosque, low, and subject to overflow; and that appellee's fence on the river side runs along the edge of the low and subject to overflow ground.

A few statements from the evidence will indicate the character of appellee's possession and his claim to the land. As to the south one-half of survey 20, the land involved here, appellee, Moor, testified:

"I have had that Thompson land; been using it continuously during all that period, for pasturing cattle and horses and farming. During that whole period since the year of 1913 or 1914, when we completed that fence we turned the horses in there. Before we put the fence up there we herded them on there."

The witness testified that it was not a fact that any one could go back and forth across the river any where they pleased; that they could break the fence down, but they could not cross there without breaking it down; that the fence along the river has never been discontinued to witness' knowledge; witness had people keeping the fence up; the fence along the river has been turning stock; said:

"I used that land for pasture from 1913 until I taken charge of it, fenced it, up to the present time. I have not put it all in cultivation yet. I suppose I have about 25 or 30 acres of this particular piece in cultivation, guessing at it as near as I can, it won't miss it very many acres. To put it in cultivation we cleared it up, grubbed it, and leveled it. After they (the federal government reclamation) put in the drain there, I never tried to cultivate any of it in any way, any of the low land until such time the reclamation put in their drainage. * * * We put the levy all the way from the west end of the island by the (Lee Moor) bridge all down to 33; I had to do that to protect this land in there; * * * I commenced to level this particular land we are talking about in 1913, 1914, and 1915. I did not do very much of it at that time. I had a house built as near as I could on this Cooper Sharpley land (the north half of survey 20)."

On the claim made by appellee to the inclosed lands appellee said, in part:

"When we first went down there (on the island), for the first few years, 5 or 6 years, there were different parties that would come in there and put a camp up and squat on it, thinking they could hold it, and we asked them to leave; told them to get off; told them we were in possession."

The witness then testified, in substance, that when he first went there (on the island) he did not know the nature of the claims people would make; did not know who they were, except just the names on the map; ap-pellee would have their claims investigated, and where people had valid claims to the land and demanded possession appellee adjusted their claims and kept the land; that occurred in several instances during the prescriptive period. Appellee said he had the land in controversy fenced during the years and had been claiming it "against anybody in the country up until now; I am still claiming all that the title is not perfected (in appellee); I am now claiming all that my title is not perfected in. I have been claiming it ever since I have been down there against everybody until such time they might show me they had rights or something there." Other similar expressions we need not quote.

[2] The court was not in error, we think, in refusing to instruct the jury in appellant's favor; nor was the court in error in refusing to submit requested issues as to whether Lee Moor had the land inclosed by a fence during the 10 years elapsing prior to the filing of his suit on May 6, 1926, as complained of under the third proposition. The court had sufficiently submitted the issue of limitation of 10 years under article 5510, R. C. S. 1925. Craig v. Cartwright, 65 Tex. 413; Houston Oil Co. v. Jones, 109 Tex. 89, 198 S. W. 290.

Article 5511, R. C. S. 1925 (old article 5677), reads:

"A tract of land owned by one person, entirely surrounded by a tract or tracts owned, claimed or fenced by another, shall not be considered inclosed by a fence inclosing the circumscribing tract or tracts, or any part thereof; nor shall the possession by the owner or claimant of such circumscribing land of such interior tract be the peaceable and adverse possession contemplated by article 5510 unless the same be segregated and separated from the circumscribing land by a fence, or unless at least one-tenth thereof be cultivated and used for agricultural purposes, or used for manufacturing purposes."

[3] The record does not show that Lee Moor owned, claimed, or had fenced the lands entirely surrounding the lands owned by Thompson, appellant, the land in controversy. The land in controversy extended to the river on the easterly end of the tract, and the land across the river was not owned, claimed, or fenced by appellee, Moor, so that, as we view it, the above-quoted article has no application and the court was not in error in refusing to give in charge to the jury appellant's requested special charge requesting a finding whether Lee Moor had at least one-tenth of the land in controversy in cultivation.

[4, 5] We think the fact that, during the time appellee was in possession of the land in controversy, and other lands, he made settlements with claimants of lands, such settlements would not necessarily show that appellee's claim of right to the land in controversy was not "inconsistent with and hostile to the claim of another" (that is, to the claim of appellant, also holding under deed); nor

would such settlements with other deed owners necessarily show that appellee's claim of right was subordinate to the right of another. There is no intimation in the evidence that appellee intended to hold in subordination to the record owner. We think, on the contrary, the evidence shows that appellee intended to hold under his claim of right until he was dispossessed by the record owner. True, he did not wait until he was actually sued or dispossessed by such other record owners of other lands, but when such other record owners made demand for possession of lands adversely held by appellee, appellee had such claimant's title examined, and when advised by his attorney that the record owner's title was good, and was advised, in substance, "to agree with thine adversary quickly while thou art in the way with him" (Matt. 5:25), then, and then only, did appellee make settlement by buying the land from such record owner.

The case of Houston Oil Co. of Texas v. Jones, 109 Tex. 89, 198 S. W. 290, by the Supreme Court, settles adversely to appellant's contention under his sixth proposition, that the judgment for appellee was error because appellee "took possession of the land sued for without any claim of rights, and his possession was not adverse and hostile to appellant."

[6] It is suggested that appellee's possession was interrupted by an adverse suit, a suit for taxes, and for that reason it was error to enter judgment in his favor. The facts, briefly stated, show that in 1920, during the prescriptive period, Thompson, at all times a nonresident, and Lee Moor, were jointly sued by the state for taxes due on the land in controversy, for the taxes due for the year 1917. Judgment was entered in favor of the state for the taxes due, with order of foreclosure of the tax lien. At that time the record title showed to be in appellant, Thompson, and prior to the suit the land had been severally assessed in the names of each of appellant and appellee, and for some years each had paid the taxes, but for 1917 the land had not been assessed to either and neither had paid the tax for 1917. The suit was filed in 1920, and land was sold under said foreclosure sale in 1920, and bought by H. M. Wight, to whom a sheriff's deed was executed. Wight bought the land for Lee Moor, paid the taxes due under the judgment, and thereafter executed a deed to the land to Lee Moor. The citation to Thompson in the tax suit was defective, and there is a stipulation by the attorneys of the parties in the statement of facts, apparently to the effect that because of the want of sufficient citation the judgment against Thompson in the tax sale was void.

We have concluded that, under the above state of facts, the tax suit and judgment was not such "adverse suit to recover the estate," as to interrupt the "peaceable possession" of appellee contemplated by article 5514, R. C. S. 1925 (former article 5680), under his plea of limitation of 10 years; his prescriptive period not having matured at the times of the filing of the suit, judgment, and sale of the land under the order of sale. Appellee remained in actual and continuous possession and use of said land, and such possession was not interrupted by anything happening by reason of the tax suit.

[7, 8] It is well settled that a sheriff's sale of land, if valid, would break the chain of title of the defendant in execution, remaining in or taking possession subsequently to the sale, and claiming limitation title, and against the holder of the title which passed by the sheriff's sale (Blum v. Rogers, 71 Tex. 677, 9 S. W. 595, and cases there cited), but we have found no case in this state holding that, prior to the maturity of the limitation title, would a tax suit and foreclosure thereunder, not valid as to the record owner, have the effect to interrupt the possession of the limitation claimant under the 10-year statute where the assessment and payment of the taxes on the land is not a material fact necessary to the prescriptive title. Under Patton v. Minor, 103 Tex. 176, 125 S. W. 6, it is held that, where the 10-year limitation claimant had no title at the institution of the suit, and therefore was not a proper party to the suit, the judgment bound him, as well as all other persons, though not served, evidently means and has application to a valid suit against a proper party properly before the court. Lee Moor having no title to the land at the time of the suit and judgment, and no right other than a possessory claim, the tax suit would not lie against his possessory claim unless the state had before the court, in the suit, the proper party against whom a foreclosure of the state's tax lien would lie. It is not shown that Lee Moor had rendered the land for taxation, nor had it been assessed in his name for the year 1917, the year for which the suit was brought, so that it might not be said that he had made himself a proper party to the suit by a voluntary rendition of the property for taxation.

The judgment is affirmed.