### EAVES et ux. v. GLENN et al.
### HOLLUMS et al. v. SAME.

No. 456, Amarillo Division; No. 100, Lubbock Division.

District Court, N. D. Texas, Amarillo and Lubbock Divisions.

Oct. 26, 1934.

Jno. B. Daniel, of Temple, Tex., and E. M. Critz, of Coleman, Tex., for defendant Glenn.

Vickers, Campbell & Evans, of Lubbock, Tex., for plaintiff Hollums and others.

J. D. Thomas, of Farwell, Tex., for plaintiffs Eaves.

JAMES C. WILSON, District Judge.

The facts of these cases are so similar, they will be disposed of in one opinion. Each of the plaintiffs, as farmers, filed their petitions, together with their schedules under section 75, as added to the Bankruptcy Act of 1898, as amended by recent acts of Congress (11 USCA § 203). Prior thereto, H. C. Glenn, the defendant, as receiver of the Temple Trust Company under appointment of the United States District Court for the Western District of Texas, brought suit against the plaintiffs herein on certain notes, in the state district court of Bell county, Tex., and to foreclose a lien on lands belonging to these plaintiffs. Judgments and foreclosures were had in those suits, and orders of sale were issued; in the case of Eaves, to W. W. Hall, sheriff of Palmer county, Tex., and in the case of John A. Hollums, to E. S. Randerson, sheriff of Floyd county, Tex., and the lands involved herein, belonging to plaintiffs, were sold by said sher-

iffs at public sale, and in each instance to the defendant H. C. Glenn, and all prior to the filing of said petitions in bankruptcy. At this juncture, while Eaves and Hollums still held possession of their lands, and prior to the delivery of any deeds by the sheriffs to H. C. Glenn as purchaser, plaintiffs filed said petitions in bankruptcy. Immediately thereafter these equity suits were filed by these plaintiffs, asking that the defendant Glenn and the sheriffs of said counties be restrained from delivering deeds to said properties and from in any manner dispossessing plaintiffs of such properties, which restraining orders, upon an ex parte hearing, were granted by this court as prayed for. Hearings on the injunctions were set down for Amarillo for the 13th of last month. The defendant Glenn presented a motion to dismiss in both cases, the principal ground being that the lands in question did not belong to plaintiffs at the time they filed their said petitions in bankruptcy, and could not legitimately be included in their schedules of assets; that the execution and delivery of deeds by the sheriffs to the defendant were not essential to the passing of title; that such act of the sheriff, in executing and delivering such deeds, is a purely ministerial act; that the fee-simple title to such properties, though such deeds had not been made or delivered, passed to defendant H. C. Glenn by virtue of the public sale, where he became, as the highest bidder, the purchaser of same; that, as a result of such public sale, titles to the properties involved were divested out of such plaintiffs and vested in the defendant as completely as if said deeds had been made and delivered prior to the filing of such petitions in bankruptcy; that, the titles having passed out of plaintiffs prior to the filing of such petitions in bankruptcy, this court is without jurisdiction of said properties.

After brief arguments on the motion to dismiss, I overruled same, and required the parties to introduce their evidence, announcing that I would really reserve ruling on the motion to dismiss until I heard the evidence. The introduction of evidence developed that there is really no controversy about the facts; those material to the decision of the case are substantially as above stated. Also the position of the defendant for a dismissal of the case on its merits is substantially as above stated on the motion to dismiss.

Plaintiffs take the position that the effect of the public sale, with the understand-

ing between the sheriffs and the defendant Glenn, as purchaser, merely that a credit of the purchase price be entered upon the judgments, in the absence of the actual execution and delivery of the deeds, would not have the effect to divest plaintiffs of their titles and vest same in the defendant; that, under such circumstances, not only the possession, but the title as well, was in plaintiffs, and was so vested in them at the time of the filing of their petitions and their schedules as debtors.

Furthermore, it is the position of the plaintiffs, under paragraph (o) of section 75 and subdivisions of same numbered (1), (2), (3), (4), (5), and (6), 11 USCA § 203 (o) (1–6), that all proceedings under the foreclosure judgments of the state district court of Bell county, particularly to dispossess plaintiffs of their lands, were suspended; that no further proceedings to divest them of title or to oust them of the possession of their properties could be had, except upon petition made to, and granted by, this court, after a hearing and report by the conciliation commissioner; that, even conceding the correctness of defendant's position that the superior title to the property passed to the defendant by virtue of the public sale, the legal title, in the absence of the execution and delivery of the sheriff's deeds, remained in plaintiffs, and under said subdivisions of section 75 no further proceedings in court or otherwise could be maintained against the plaintiffs or their properties at any time after the filing of their said petitions in bankruptcy, and prior to the confirmation or other disposition of their composition or extension proposals.

No question is raised as to the constitutionality, or the validity of this act. Assuming that the act is valid and binding, it is a question here of determining the intent of Congress as gathered from the words of the amendment. On this basis, I think it clear that Congress intended that the filing of such a petition in bankruptcy by the farmer was to be a caveat to all the world that all legal proceedings against the farmer, either to divest him of the title to property, or of the possession of property, should cease upon the filing of such bankruptcy petition, and that thereafter the farmer's rights with respect to the title or possession of property, as well as the rights of all his creditors, should be submitted to, and passed upon by, the Bankruptcy Court, to the exclusion of all other courts. To my mind, paragraph (n) of sec-

tion 75, 11 USCA § 203 (n), and paragraph (o), with its subdivisions numbered from (1) to (6), inclusive, settles this. Those provisions of the act are as follows:

"(n) The filing of a petition pleading for relief under this section shall subject the farmer and his property, wherever located, to the exclusive jurisdiction of the court. In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the court, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition or answer was filed.

"(o) Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner, the following proceedings shall not be instituted, or if instituted at any time prior to the filing of a petition under this section, shall not be maintained, in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court:

"(1) Proceedings for any demand, debt, or account, including any money demand;

"(2) Proceedings for foreclosure of a mortgage on land, or for cancellation, rescission, or specific performance of an agreement for sale of land or for recovery of possession of land;

"(3) Proceedings to acquire title to land by virtue of any tax sale;

"(4) Proceedings by way of execution, attachment, or garnishment;

"(5) Proceedings to sell land under or in satisfaction of any judgment or mechanic's lien; and

"(6) Seizure, distress, sale, or other proceedings under an execution or under any lease, lien, chattel mortgage, conditional sale agreement, crop payment agreement, or mortgage."

▮ There is no question raised here as to the jurisdiction of the state district court in the foreclosure proceedings, nor as to the validity of the order of sale issued by that court, nor is the legality of the sheriff's act in selling the properties in any manner questioned. As to where the titles to the properties are, under the undisputed facts as heretofore stated, we must look to the statutes and decisions of Texas. They are binding upon this court. As to whether the effect of public sales, made by the sheriffs, of these properties, though no deeds were executed or delivered prior to the filing of the petitions in bankruptcy, was to divest the title out of plaintiffs and vest them in the defendant, we must look to the decisions of Texas. When we do look to those decisions, we find there is absolutely no diversity of opinion. On the other hand, it appears the law of Texas is settled that, as contended for by the defendant, the effect of such a public sale, even though no cash was paid, but a credit only was to be entered upon the judgment, beyond controversy places the equitable and superior title in the purchaser. Also defendant's position that the sheriff's deed is a ministerial act and not essential to the validity of the sale made by him is likewise abundantly supported by Texas authorities. Reeder v. Eidson (Tex. Civ. App. 3rd Dist.) 102 S. W. 750; Eidson v. Reeder, 101 Tex. 202, 105 S. W. 1113; Rosenthal & Desberger v. Mounts (Tex. Civ. App. 6th Dist.) 130 S. W. 192; Willis v. Smith, 66 Tex. 31, 43, 17 S. W. 247, 248; Gillette v. Davis (Tex. Civ. App. 11th Dist.) 15 S.W.(2d) 1085, 1088; Donnebaum v. Tinsley, 54 Tex. 362, 365; Miller v. Alexander, 8 Tex. 36, 43, 44; Griggs v. Montgomery (Tex. Civ. App. 9th Dist.) 22 S.W.(2d) 688, 694; 18 Tex. Jur. 725, § 160; Blum v. Rogers, 71 Tex. 668, 9 S. W. 595; Needham v. Cooney (Tex. Civ. App.) 173 S. W. 979, 982.

The position of the courts of Texas on the subject is fairly represented by the following from Rosenthal & Desberger v. Mounts (Tex. Civ. App.) 130 S. W. 192, 194: "When the sale was made and the land bid in by Mounts he was acting either as the attorney for the appellants, as the agent of Peterson, or for himself. If he was acting as the attorney for the appellants, the acceptance of his bid by the sheriff, the payment of the costs, and crediting the balance on the judgment would pass to appellants the title to whatever interest was sold. A deed from the sheriff was not essential to the investiture of title."

The Texas Court of Civil Appeals at Beaumont, in Griggs v. Montgomery, 22

650

S.W.(2d) 688, 694, held: "The validity of a sheriff's sale under execution or order of sale is not dependent upon the regularity of his return. The total failure to make the return does not affect the sale. Willis v. Smith, 66 Tex. 31, 17 S. W. 247. Therefore, a defective return could not have that effect. The failure of the sheriff to execute and deliver a proper and valid deed, if in fact his deed was defective, did not destroy the purchaser's interest acquired under the sale."

The quotations from these decisions, if we stop there, might leave the impression that the investiture of title in the purchaser, regardless of the execution and delivery of the officer's deed, was complete. This is not true, however. The effect of the public sale, without the delivery of the deed to the purchaser, has only the effect to leave the equitable and superior title in the purchaser, while the legal title remains in the original owner or defendant, in such foreclosure proceedings. That is exactly the situation we have here. The equitable and superior titles to the properties in question are in the defendant Glenn by virtue of the sales that admittedly took place, while the legal title to such properties remain in these plaintiffs Eaves and Hollums. In Gillette v. Davis (Tex. Civ. App.) 15 S.W.(2d) 1085, 1088, the court said: "Undoubtedly, in the absence of the sheriff's deed, appellant's title was only equitable and not legal. * * * In the absence of prior equities, the title, though equitable, was just as effective to support recovery of the land as a legal title."

This being the status with respect to the titles, in what situation do we find these plaintiffs and the defendant? The latter decision has not been overruled, but, upon a consideration of all the Texas cases, it might be more accurate to say even the legal title passed by the sale and merely the record title remained in the plaintiffs; that the sheriff's deed, if made, would not effect a conveyance of title, but would simply be evidence of such title in the purchaser. In other words, if the first of the year came around, the state and county taxes would be assessed against the plaintiffs as the owners of the land. In addition to this, plaintiffs are in possession and are alleging that defendant is threatening to dispossess them, and they are resisting, by these very suits, and the proceedings in bankruptcy, any efforts on the part of the defendant to oust them of such possession, or to perfect title in himself. In other words, they have refused to voluntarily surrender whatever title and possession that is now in them. It therefore becomes incumbent upon the defendant Glenn to take further legal proceedings, either by suit to recover from plaintiffs such title, or by an application to the state district court of Bell county for additional writs or processes in order to dispossess plaintiffs. I am impressed that it was the intention of Congress that, all such legal proceedings, after the filing of the petitions in bankruptcy by these plaintiffs, were conditionally denied to the defendant. I do not see why the very appearances in these equity cases, and making the motions to dismiss the proceedings, and filing the answers to the merits, are not also denied to defendant, in the absence of a petition made to and granted by this court, after a hearing and report by the conciliation commissioners, etc., as is provided in paragraph (o) of section 75. The fact that the proceedings in Bell county were instituted prior to the filing of such petitions in bankruptcy gives no right whatever to pursue those proceedings to a finality, except in a prescribed way. As far as the intent of Congress is concerned, nothing could be made plainer. The provisions of paragraph (o) are too plain for construction that, whether such a state suit has been filed before or after the farmer's petition in bankruptcy, all proceedings in court or otherwise, against the farmer or his property, must stop until certain things have been done, and certain things have happened, none of which have been done, and none of which have happened here. Subdivision (2) of paragraph (o) makes it plain to my mind that it is not even necessary for the question of title, or divestiture of title, to be involved, but that it is only necessary for a question of the recovery of the possession of land to be involved. Certainly whatever additional proceedings might take place in the Bell county suit, looking to a completion of the title in the plaintiff Glenn in that suit, or placing him in possession of the lands in question, would be proceedings that are intended to be inhibited by this act. I think, without permission, any further proceedings in the Bell county suit would be in violation of several of these numbered subdivisions of paragraph (o). It provides the following proceedings shall not be instituted, or, if instituted prior to the filing of such petitions, shall not be maintained, in any court or otherwise:

"(1) Proceedings for any demand, debt, or account, including any money demand;

"(2) Proceedings for foreclosure of a mortgage on land, * * * or for recovery of possession of land; * * *

"(4) Proceedings by way of execution; * * *

"(5) Proceedings to sell land under or in satisfaction of any judgment; * * *

"(6) Seizure * * * under an execution * * * or mortgage."

As heretofore indicated, what has happened in connection with these sales, under the decisions of Texas, places the real title to these properties in the defendant Glenn as the receiver of the Temple Trust Company. I am not able to see anything in the bankruptcy laws, as amended, which could be availed of to nullify that title or that would enable the plaintiffs, over the opposition of defendant, to recall to themselves the superior title that passed to the defendant Glenn before the petitions in bankruptcy were filed. If those petitions had been filed prior to the sale, all such questions would be entirely removed. Then such properties, without question, would be subject to due administration under this amendatory act. The point is, the proceedings of the state court must stop, if against the farmer or his property, unless permission of this court should be asked and granted, and right at that point where they have progressed when the petition in bankruptcy is filed.

Primarily this act of Congress is for the benefit of farmer debtors. Creditors under it are not merely those who have money demands against the farmer, debts, but who have any kind of claims against him. Defendant here, after crediting the amount bid for the property, has a deficiency judgment against these debtors. In each case they are seeking possession of the lands involved, and, in order to realize upon the foreclosure judgments and sales and perfect in themselves such titles as they may convey and be acceptable to others, they must take further legal proceeding in state court against the debtors. However secure defendants may be as to their legal rights in the premises, it is my view that Congress intended, in just such situations, that the farmer be given an opportunity, in a hearing before the conciliation commissioner, with all his creditors and claimants present, to procure a composition or extension of his debts. The theory seemed to be this:

Even though litigation had commenced and sales occurred, in such a conference or hearing concessions might be made and the farmer helped and enabled to carry on. Certainly the defendant here could voluntarily undo what has been done. In a hearing before the conciliation commissioner, a settlement might be reached that would better serve the interests of all parties. I do not know. Anyway, Congress intended that the opportunity to do so be afforded, even in an extreme case like this.

These being my views as to the effect of the statute upon the situation of these parties as we find them under the undisputed facts, I will overrule the defendants' motion to dismiss and refer these matters to the conciliation commissioners of Palmer and Floyd counties, with directions that the usual proceedings in such matters be had in these cases. The form of such a decree and reference may be drawn up for my signature.